UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN P. STROJNY and**                             Chapter 7
**ANA P. STROJNY,**                                   Case No. 08-17328-JNF
    Debtors

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

The matters before the Court are the Cross-Motions for Summary Judgment filed by Chapter 7 debtors, Steven P. Strojny (individually, "Strojny") and Ana P. Strojny (jointly, the "Debtors"), and creditor, Michelle Conley ("Conley"), on August 15, 2011 with respect to the "Motion to Re-Open Chapter 7 Case" (the "Motion to Reopen") filed by Conley on June 14, 2011. The Debtors opposed the Motion to Reopen, and the Court heard the Motion to Reopen and the opposition on July 25, 2011. At the hearing, the Court deemed the dispute a contested matter, *see* Fed. R. Bankr. P. 9014(c), and authorized the parties to file motions for summary judgment by August 15, 2011. The Court heard the Cross-Motions for Summary Judgment on October 26, 2011 and took the matters under advisement. The Court now makes the following findings of fact and conclusions of law pursuant to Fed. Bankr. P. 7052.

1

## II. FACTS AND PROCEDURAL HISTORY

The Debtors filed a voluntary Chapter 13 petition and their matrix of creditors on September 29, 2008. They did not include Conley on either their creditors' matrix or on their Schedules of liabilities which they filed on November 6, 2008. On March 4, 2010, the Court granted the Debtors' Motion to Convert Case to Chapter 7. In conjunction with the conversion of the case to Chapter 7, the United States trustee appointed Donald Lassman as the Chapter 7 trustee. The Court established June 7, 2010 as the deadline for filing complaints objecting to discharge or to determine dischargeability of debts. *See* 11 U.S.C. §§ 523 and 727. Conley did not receive the original notice of the commencement of the case or the deadline for filing discharge complaints. The Chapter 7 trustee filed a Report of No Distribution on April 9, 2010.

On or about May 21, 2010, Conley, as plaintiff, filed a "Verified Complaint" against Strojny, a licensed attorney and real estate broker, as well as Strojny Real Estate Company, a business owned by Strojny, LoanQuest Mortgage Services, Inc., a mortgage company owned and operated by Strojny, Sovereign Bank and other defendants in the Taunton Superior Court Department of the Trial Court.[1] Through her Verified Complaint, Conley alleged, *inter alia*, that Strojny and the other defendants violated several state and federal

---

[1] Conley filed an unsigned copy of the Verified Complaint as an exhibit to her Motion for Summary Judgment (*see* Doc. No. 152). Her attorney, William H. Carroll, Esq., submitted an Affidavit in connection with the Motion for Summary Judgment, in which he stated that the Verified Complaint was filed on May 21, 2010. Conley later filed a Motion for Leave to Amend the Verified Complaint (the "Amended Verified Complaint") which she served on the defendants on April 29, 2011.

statutes, including the Massachusetts Predatory Home Loan Practices Act, the federal Home Ownership and Equity Protection Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act in connection with Conley's execution of a mortgage in favor of Sovereign Bank on July 11, 2008 to finance her purchase of real property in Raynham, Massachusetts, a transaction in which Conley alleged that Strojny acted as her "attorney/broker/loan originator" as well as the closing attorney for Sovereign Bank (the "Raynham Transaction"). Conley alleged in the Verified Complaint that there was an "obvious conflict to [sic] interest in Steven Strojny's position as Attorney for Conley/broker/loan originator . . . / [and] bank closing attorney" in the transaction. Additionally, she alleged that Strojny made a series of statements to her, including an offer to refinance her loan before the first payment was due, to induce her to enter into the loan transaction for the Raynham property which she "clearly could not afford." In paragraph 24 of the Verified Complaint, Conley alleged that, according to the HUD settlement statement from the Raynham Transaction, which she attached as Exhibit A to that Complaint, she was entitled to receive payment of $14,800, but had received only $7,027 to date.

According to Conley, the overriding purpose of the Taunton Superior Court action was to save her Raynham home from foreclosure. Sovereign Bank, however, later foreclosed on the property in June, 2010. Following the foreclosure sale, Sovereign Bank initiated a summary process action for eviction against Conley in the Southeast Massachusetts Housing Court.

As a result of receiving notice of the Taunton Superior Court action, the Debtors filed a Motion to Amend Schedule F - Creditors Holding Unsecured Nonpriority Claims on May 25, 2010 to include Conley, Strojny Real Estate Company and two other defendants in the Taunton Superior Court action as unsecured creditors with contingent and disputed claims, each in an unknown amount. The Debtors served a copy of their Motion to Amend on Conley's counsel, William H. Carroll, Esq. ("Attorney Carroll"). The Court allowed the Debtor's Motion to Amend on May 26, 2010, and on the next day, May 27, 2010, the Court issued a Notice to Added Creditors providing that the deadline to file complaints objecting to the discharge or dischargeability of debts was July 27, 2010 for added creditors. On May 29, 2010, the Bankruptcy Noticing Center mailed a Notice to Added Creditors to Conley, c/o Attorney Carroll. None of the added creditors filed complaints under 11 U.S.C. §§ 523 or 727, and the deadline of July 27, 2010 passed without any request for extension or complaint being filed. The Debtors received a "Discharge of Joint Debtors" the following day on July 28, 2010. On August 3, 2010, this Court issued the Order Discharging Trustee and Closing Case.

Despite the entry of the discharge, Conley continued to pursue Strojny in the Taunton Superior Court and with the Massachusetts Board of Bar Overseers (the "BBO"). On September 15, 2010, Conley sent a letter to the BBO for the purpose of registering a complaint against Strojny because of his conflicting roles in the Raynham Transaction and because he "forged documents and kept proceeds to [sic] the settlement." As noted above in footnote 1, on or about April 29, 2011, Conley filed the Amended Verified Complaint

4

against Strojny and the other defendants in the Taunton Superior Court action in which she specifically asserted several counts for fraud against them.

Six weeks following the filing of the Amended Verified Complaint, on June 14, 2011, Conley filed the Motion to Reopen in which she acknowledged the Debtors' amendment of their schedules to add her as a creditor. She alleged, however, that she discovered that Strojny may have committed fraud against her after she filed the original Verified Complaint in the Taunton Superior Court action. Conley sought leave to reopen the case pursuant to 11 U.S.C. § 350 for the purpose of conducting a Fed. R. Bankr. P. 2004 examination of Strojny because "per . . . 11 U.S.C. 523(a)4, [sic] Debtor Strojny may not be entitled to a discharge from Creditor Conley's claim against him. . . ."

The Debtors opposed the Motion to Reopen, arguing that Conley had actual notice of the deadline to object to the dischargeability of debts but failed to file a timely complaint or a request for extension of time to do so. *See* Fed. R. Bankr. P. 4007(c).

### III. POSITIONS OF THE PARTIES

Conley contends that the "further inklings of fraud [against Strojny] did not come to light until Sovereign Bank and Federal Home Loan National Corporation responded to . . . Conley's interrogatory [sic] and production requests on November 24, 2011 [in the summary process action.]"[2] Despite the allegations made by Conley in the BBO letter on September 15, 2010, Conley argued at the October 26, 2011 hearing that she discovered the

---

[2] This is an apparent typographical error and a reference to November 24, 2010. *See* Conley's Memorandum in Support of her Motion for Summary Judgment.

5

alleged fraud "no earlier than November 24th [2010] when the documents were provided by Sovereign Bank." She further maintains that the constraints of Fed. R. Civ. P. 9(b), made applicable to this proceeding by Fed. R. Bankr. P. 7009, which requires that fraud be pled with particularity, as well as Fed. R. Bankr. P. 9011, precluded her from timely filing a nondischargeability complaint because "everything was put together . . . well past . . . the July 2[7], 2010 [deadline]."

The Debtors argue in their Motion for Summary Judgment that "none of the new Counts added into the Amended Verified Complaint alleging fraud stem from anything that had not already happened as of the time the original case was filed" and thus Conley's claim arose prepetition and was discharged upon the entry of the "Discharge of Joint Debtors" on July 28, 2010. Accordingly, the Debtors maintain no cause exists to reopen the Debtors' case under 11 U.S.C. § 350, and any nondischargeability complaint would be time barred. The Debtors also seek payment by Conley of their attorneys' fees incurred in defending her actions which they allege violate their discharge.

## IV. DISCUSSION

As a threshold matter, the Court finds that Conley's claim against Strojny, whether sounding in fraud or otherwise, accrued prior to and existed as of the commencement of the bankruptcy case because the alleged injurious conduct occurred prior to the commencement of the bankruptcy case. *See* <u>Salois v. The Dime Savs. Bank of N.Y., FSB</u>, 128 F.3d 20, 25 (1st Cir. 1997)("A cause of action generally accrues at the time of the plaintiff's injury, or, in the case of a breach of contract, at the time of the breach.").

The Court turns next to the issue of reopening the case. Pursuant to 11 U.S.C. § 350(b), "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The bankruptcy court has discretion to determine motions to reopen. In re Dator, 98-15046-JNF, 2006 WL 2056678, *2 (Bankr. D. Mass. July 21, 2006). Because Conley seeks to reopen the Debtors' case for purposes of determining whether Strojny's debt to her is dischargeable pursuant to 11 U.S.C. § 523(a)(4)(debts arising from "fraud, defalcation while acting in a fiduciary capacity, embezzlement, or larceny"), Fed. R. Bankr. P. 4007 is implicated. Rule 4007(c) provides that a creditor "shall" file a complaint to determine the dischargeability of a debt under § 523(c)(referring to debts for fraud, embezzlement, and malicious injury under 11 U.S.C. § 523(a)(2), (4) or (6)) no later than 60 days after the first date set for the meeting of creditors. The Rule 4007(c) deadline in this case was extended to July 27, 2010 for creditors, such as Conley, who were added to the Debtors' schedules after the original deadline for filing complaints under 11 U.S.C. §§ 523, 727 expired. The rule further provides that the Court may extend the time to file a nondischargeability complaint under § 523(c), for cause, but a motion to do so "shall be filed before the time has expired." Fed. R. Bankr. P. 4007(c). Under Fed. R. Bankr. P. 9006(b)(3), courts may enlarge the time for taking action under Rule 4007(c), but "only to the extent and under the conditions stated" in that rule. Fed. R. Bankr. P. 9006(b)(3).

Conley failed to file a complaint seeking an exception to discharge of the debt under § 523(a)(2) or (4) by the deadline of July 27, 2010, and she failed to file a motion requesting

7

an extension of time to do so. Her counsel stated that it was her intention to file a complaint under 11 U.S.C. § 523(a)(4) if the Court allows her Motion to Reopen. Based upon the untimeliness of the request and the information she had prior to the expiration of the deadline, the Court finds that Conley's Motion to Reopen is without merit.

In MetroBank v. Brown (In re Brown), 98-81023, 98-8188, 1999 WL 33582119 (Bankr. C.D. Ill. Apr. 12, 1999), the Court considered a debtor's motion to dismiss a complaint filed by a creditor, MetroBank, under 11 U.S.C. §§ 523(a)(6) and 727(d)(1) after the deadline imposed by Rule 4007(c). In that case, MetroBank received notice of the bar date for filing nondischargeability complaints but failed to file a complaint. It argued that it was prevented from discovering the grounds for obtaining a determination that its debt was nondischargeable until after the bar date had passed due to misrepresentations by the debtor. The court, quoting Manufacturers Hanover Trust v. Shelton (In re Shelton), 58 B.R. 746 (Bankr. N.D. Ill. 1986), which presented a similar factual scenario, adopted its reasoning:

> There is no recourse for a party who fails to file a timely complaint objecting to the dischargeability of a debt under §§ 523(a)(2), (4), or (6) or to move in a timely fashion for an extension of the period within which to file a complaint. If the Bank's allegations are true, the debtors in this case may have connived with their former attorney to convince the Bank to forego filing a complaint objecting to the dischargeability of its claim. However, that question is simply irrelevant. The Bank's choices when it failed to receive a signed reaffirmation by late May 1985 were obvious. The Bank should have either filed a complaint objecting to dischargeability or moved for an extension of time in accordance with the time restrictions of Rule 4007(c) . . . Prudence (not to mention the Bankruptcy Code and Rules) dictated that it should have at least moved to extend the time period for filing objections.

Id. at 3 (quoting Manufacturers Hanover Trust v. Shelton (In re Shelton), 58 B.R. 746, 749 (Bankr. N.D. Ill. 1986))(footnotes and citations omitted).

In this case, Conley had notice of the July 27, 2010 deadline as soon as her attorney received the Notice to Added Creditors mailed by the Bankruptcy Noticing Center on May 29, 2010. Nevertheless, she failed to file a nondischargeability complaint or a motion to extend the time to do so. She received notice of the deadline after her filing of the original Verified Complaint in the Taunton Superior Court action, in which she alleged that Strojny had multiple conflicts of interest in the Raynham Transaction and that he made statements to induce her to enter into a loan transaction which she could not afford. Additionally, she alleged in paragraph 24 of her Verified Complaint that she received at the closing $7,773 less than was disclosed on the HUD settlement statement. As was highlighted by the courts in Brown and Shelton, prudence mandated that Conley file a motion for an extension of time to file a nondischargeability complaint against Strojny based upon what she already knew about the nature of her claims against him. Indeed, the pending state court action by itself would have been sufficient grounds to request an extension. Simply stated, the Court finds that Conley had sufficient information prior to July 27, 2010 to have filed a request for an extension of time to file a complaint for exception to discharge. With respect to counsel's concerns about pleading standards under Fed. R. Bankr. P. 7009 and 9011, those concerns could have been allayed by the filing of a motion for an examination of the Debtors pursuant to Fed. R. Bankr. P. 2004 during any extended period under Rule

4007(c). To the extent Conley relies on equitable tolling of the time period under Rule 4007(c) due to her belated "discovery" of the fraud claims, the Motion to Reopen also must fail. In Kontrick v. Ryan, 540 U.S. 443, 447, 124 S.Ct. 906, 910, 157 L.Ed.2d 867 (2004), the Supreme Court held that the time limits under Fed. R. Bankr. P. 4004 are not jurisdictional. Rather, the 60–day deadline for filing complaints to determine dischargeability of debt is analogous to a statute of limitations. Le Grand v. Harbaugh (In re Harbaugh), 301 B.R. 317, 320 (B.A.P. 8th Cir. 2003). While the Supreme Court in Kontrick specifically declined to rule on whether equitable principles permit the bankruptcy court to extend deadlines under Rule 4007, some courts have held that, as a statute of limitations, Rule 4007(c) is subject to the defense of equitable tolling. *See* Nardei v. Maughan (In re Maughan), 340 F.3d 337, 344 (6th Cir. 2003); *but see* Francis v. Eaton (In re Eaton), 327 B.R. 79, 85 (Bankr. D. N.H. 2005)(disagreeing with those cases holding equitable tolling is available to permit the late filing of a complaint where the creditor received notice due to strict extension limitations in Bankruptcy Rule 9006(b)(3)). In the present case, there are no grounds to apply the doctrine of equitable tolling as Conley's counsel had notice of the extended deadline for filing complaints seeking exceptions to discharge.

Even were this Court to consider applying the doctrine of equitable tolling, Conley has failed to establish the required elements of that defense. As explained by the court in In re McConkey, 08-25164-JS, 2011 WL 1436431 (Bankr. D. Md., Apr. 14, 2011), in order to establish equitable tolling, a party "must show that her failure to file a complaint within the time provided was the result of '(1) extraordinary circumstances, (2) beyond [her]

10

control or external to [her] own conduct, (3) that prevented [her] from filing on time.'" Id. at *7 (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003)).

    Conley has demonstrated no extraordinary circumstances that prevented her from timely filing either a nondischargeability complaint or, at the very least, a motion to extend the time to file a complaint. She could have examined Strojny during the initial 60-day period or during any extended period, with the extremely broad powers of discovery afforded by Fed. R. Bankr. P. 2004, and obtained sufficient factual support to meet the pleading requirements of Fed. R. Bankr. P. 7009 and Fed R. Bankr. P. 9011.  Far from being prejudiced by extraordinary events beyond her control, Conley's conduct in this matter reflects a lack of diligence in pursuing and preserving her rights.  At the time she received formal notice of the bankruptcy case, she had already commenced litigation against Strojny based upon his alleged conflicts of interest and for statements he made to her in his various capacities which induced her to enter into a loan she claimed she could not afford.  She complained about Strojny to the BBO on September 15, 2010, more than two years after the closing of the Raynham Transaction, alleging that he engaged in forgery and theft in that transaction.  Such criminal conduct, if it occurred, is undoubtedly the type which would have revealed itself shortly after the closing and well prior to the nondischargeability complaint deadline.  Following receipt of discovery in the summary process action on November 24, 2010, she still did not take action in the bankruptcy court. Even after April 29, 2011, when Conley filed the Amended Verified Complaint in which she asserted specific counts for fraud against Strojny, she inexplicably continued to sit on her rights,

waiting another six weeks until June 14, 2011 to file the Motion to Reopen. Conley's ability to commence any discovery to preserve her claims was well within her own control. While she maintains that she did not discover sufficient information to substantiate a nondischargeability complaint until after the bar date, the record belies her assertions. In any event, her failure to uncover that information during the required time period was not due to extraordinary or external events and was in no way attributable to any conduct of or concealment by the Debtors.

## V. CONCLUSION

In view of the foregoing, the Court finds that it would be futile to reopen this case for the purpose of conducting a Fed. R. Bankr. P. 2004 examination or commencing an adversary proceeding on a discharged claim. Conley has failed to establish cause under 11 U.S.C. § 350 to do so. The Debtor's Motion for Summary Judgment is allowed, and Conley's Motion for Summary Judgment is denied. The Motion to Reopen is denied. The Debtors' request for attorneys' fees is denied.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

December 29, 2011